# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY SESSION, 1997

FILED

September 12, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| JOHN C. RHEAUME, | ) | C.C.A. NO. 02C01-9607-CR-00246 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. JOSEPH B. BROWN, JR. |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF SHELBY COUNTY

FOR THE APPELLANT:

JAMES A. COHEN
200 Jefferson Avenue, Suite 925
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

JANIS L. TURNER
Assistant Attorney General
425 5th Avenue, North
Nashville, TN 37243

JOHN W. PIEROTTI
District Attorney General

ALANDA HORNE
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Street
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Petitioner appeals as of right the trial court's denial of his petition for post-conviction relief. The Petitioner pleaded guilty pursuant to a plea agreement to one count of aggravated rape and one count of aggravated robbery. He was sentenced to twenty years incarceration for the aggravated rape and twelve years for the aggravated robbery, to be served concurrently.

The Petitioner was convicted on September 21, 1992. He filed a pro se petition for post-conviction relief on January 13, 1995, within the three-year statute of limitations applicable to petitions filed before May 10, 1995. See Tenn. Code Ann. § 40-30-102 (repealed 1995); § 40-30-201 (Supp. 1996). Counsel was appointed and an amended petition was filed on May 15, 1996. The trial court dismissed the petition after an evidentiary hearing conducted on January 4th and 24th, 1996. The Petitioner now appeals the trial court's denial of his petition and raises two issues: (1) That he was denied the effective assistance of counsel; and (2) that he did not voluntarily, knowingly and understandingly waive his rights when he entered his guilty plea. We affirm the judgment of the trial court.

The facts supporting the Petitioner's guilt reveal that a white male fitting the Petitioner's description accosted a woman as she was leaving her home in Memphis, Tennessee at approximately 6:45 in the morning. She described him as a white male wearing a ski mask, who appeared to be in his early to mid twenties. He was approximately 5'6" to 5'7" tall. He wore a blue baseball cap

with an insignia, a brown leather jacket, brown and green camoflauge pants, white Converse tennis shoes, a brown gun holster and black gloves.

The perpetrator had a silver revolver and forced the woman to go back into her house. While there, he rifled her purse and took two gasoline credit cards and two twenty dollar bills. He forced the woman at gunpoint to walk through every room in the house. In one room, he directed the victim to get telephone cord with which he tied her up. The assailant put the woman on the bed and put a pillowcase over her head. He fondled her buttocks and genitals over her clothes, then fondled her breasts. He allowed the victim to go to the bathroom and took off the pillowcase and the cord around her hands because she agreed to cooperate. He smoked a cigarette. He made the victim take off her top and put on a camisole he found in a drawer. The perpetrator digitally penetrated the victim anally, had her perform fellatio twice, and penetrated the victim with his penis three times. The victim noted her clock during the assault, which occurred between 8:07 a.m. and 8:17 a.m. After the sexual assault, the perpetrator instructed the victim not to look at him while he dressed himself. He threw a towel to the victim and told her to pull up her pants and get a shirt for herself. At approximately 9:30 a.m., he put the victim in a storage closet face down with her arms and legs bound. She remained there until approximately 12:45 p.m. The victim noted that her car had recently been stolen and recovered three times and she had noticed the smell of smoke and a body odor like her assailant's in the car when it was returned.

The perpetrator left the house in the victim's car, a 1991 maroon Mazda Protege, but returned it later that morning. While the victim's neighbor was car

pooling his children to school, he saw the perpetrator in the victim's car as it pulled into her driveway. He saw the man leave the car in the driveway and walk down the street. The neighbor called 911 and gave a description of the man as white, between 5'7" and 5'9" tall, with dark hair and a slight mustache, who appeared to be in his early twenties. The perpetrator was wearing combat type boots, green pants and a brown jacket. Police officers met the neighbor at his home to investigate the report. After leaving his house and going to his office, the neighbor saw the suspect at a local supermarket. Police officers were contacted again and they arrested the Petitioner. Both the victim and the neighbor identified the Petitioner as the assailant. Police officers recovered a blue baseball cap, tennis shoes, a brown leather jacket, dark brown gloves, a pair of camoflauge pants, a sleeveless shirt, white underwear and a Halloween mask from a search of the Petitioner's home.

In the Petitioner's first issue, he contends that his appointed counsel provided ineffective assistance. He notes that the State provided counsel with an extensive list of witnesses and that counsel did not contact most of the State's witnesses. He next contends that after counsel received items from the State through a discovery request, she merely told the Petitioner that they were the materials she had received. He claims that counsel did not explain any of the documents to him. The Petitioner also alleges that defense counsel failed to discuss results of blood and hair sample tests. Furthermore, he argues that he pleaded guilty only because defense counsel "threatened" him with an eighty-year sentence. Finally, he contends that he was not properly informed because he attended only two court proceedings.

In determining whether counsel provided effective assistance at trial, the court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper 849 S.W.2d at 746.

This two part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52 (1985). The prejudice requirement is modified so that the petitioner "must show

that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

At the hearing on the petition, counsel testified that she requested and received discovery from the State. She met with the Petitioner, discussed the meaning of the items received as well as the theory of the case. She testified that the Petitioner sent her a letter detailing his version of the facts. He claimed that he had a personal relationship with the victim and that they were involved in a scheme to steal computer equipment from a school. When the Petitioner backed out of the plan, the victim then fabricated the charges against him. Counsel attempted to contact a person the Petitioner had named in the letter but could not locate anyone with the name she was given. Counsel did contact several other witnesses the Petitioner gave, but they were of no assistance in the case. Finally, counsel admitted to not contacting the police officers listed as witnesses for the State because "the police officers don't want to talk to us and we generally don't contact them." She did state that she contacted persons at the rape crisis center and the University of Tennessee toxicology laboratory.

Counsel noted that the Petitioner was uncooperative and threatened to withhold the names of possible witnesses. Counsel sent the Petitioner a lengthy letter that refers to the Petitioner's lack of cooperation with her. The letter stated: "I hope that you will make an attempt to try to help me defend you against a case in which you are facing a possible forty (40) year consecutive to forty (40) years sentence. The state's proof is very strong." The Petitioner contends that counsel misrepresented the possible sentences he would receive if he went to trial and was convicted and that the above statement in counsel's letter suggested he may

receive an eighty-year sentence. Counsel was not asked to explain the contents of the letter on direct or cross-examination at the post-conviction hearing. Counsel did testify that her calculation of the sentencing ranges and the possibility of consecutive sentencing were fifteen to twenty-five years for aggravated rape as a range I offender and twelve to twenty years for the aggravated robbery as a range II offender. Counsel testified that she discussed with the Petitioner these potential sentences and the possibility of consecutive sentencing for an effective term of forty-five years. Furthermore, the transcript of the Petitioner's guilty plea proceeding reflects that he was aware that "[e]ither I accept this [plea agreement] or I take a chance of getting 45 years." Although the letter suggests an eighty-year sentence, there is other evidence in the record that contradicts the information in the letter, namely, that counsel calculated a possible forty-five year sentence and that the Petitioner was aware of this when he entered his guilty plea. We are mindful that there must be proof that counsel made errors so serious that she was not functioning as counsel as guaranteed under the Sixth Amendment. Strickland, 466 U.S. at 687. There is evidence that counsel took measures to correct a prior error in calculating the potential sentence.

The Petitioner claims that counsel did not inform him of the forensic testing that was conducted and that the semen sample obtained from the victim did not conclusively prove he was the perpetrator. However, counsel testified that she discussed possible DNA analysis with the Petitioner to confirm the identity of the assailant and also informed him of the negative consequences if he, indeed, matched the sample. The record reflects that counsel requested time to discuss DNA testing with her client. Counsel testified that the Petitioner refused the test.

Finally, counsel testified that she met with the Petitioner sixteen times in addition to his court appearances. She also stated that she was prepared to go to trial on the case when a plea agreement was reached that same day.

The trial court found that "Ms. Brown, counsel for the defendant, had conducted or did conduct an above-average defense of this particular individual." In a post-conviction proceeding under the Act applicable to this case, the petitioner must prove the allegations in the petition by a preponderance of the evidence. Davis v. State, 912 S.W.2d 689 (Tenn. 1995); Adkins v. State, 911 S.W.2d 334, 341 (Tenn. Crim. App. 1994). In appellate review of post-conviction proceedings, the trial court's findings of fact are conclusive unless the evidence in the record preponderates against the findings. Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). On its face, counsel's letter presents a potential sentence that is in error. However, the trial court found that the evidence showed that the Petitioner discussed with counsel his potential sentences that he was "reasonably put on notice" regarding the correct range of sentences to be imposed if he went to trial and was convicted. Consequently, no prejudice resulted from counsel's erroneous letter. The court found that counsel adequately investigated relevant witnesses and noted the Petitioner's failure to cooperate with counsel. Also, counsel consulted with the Petitioner on numerous occasions. Finally, the court concluded that the Petitioner was familiar with the criminal justice system from his prior convictions and that "[t]he court, quite frankly, does not believe many of the assertions given by the defendant during the course of these proceedings." We cannot conclude that the evidence presented by the Petitioner preponderates against the findings of the trial court. Therefore, we agree that the Petitioner has failed to

demonstrate that counsel's performance fell below the required standard or that he was prejudiced by counsel's actions. This issue is without merit.

Next, the Petitioner asserts that he did not voluntarily, knowingly or intelligently enter his plea of guilty. In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court held that the record must show that a guilty plea was made voluntarily, understandingly and knowingly. In Boykin, the Court held that an entry of a guilty plea effectively constituted a waiver of the constitutional rights against compulsory self-incrimination, the right to confront one's accusers, and the right to trial by jury. Id. at 243. If a guilty plea is not voluntary and knowing, it has been entered in violation of due process and is, therefore, invalid.

A voluntary plea cannot be found from a silent record. Boykin, 395 U.S. at 242. Pursuant to its supervisory power, our supreme court has imposed more stringent standards for trial courts to employ when advising defendants during guilty pleas to provide an adequate record that will insure constitutional compliance. State v. Mackey, 553 S.W.2d 337 (Tenn.1977). However, post-conviction relief may be granted only if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-105 (repealed 1995). As was pointed out in State v. Neal, 810 S.W.2d 131 (Tenn. 1991), violation of the advice litany required by either Mackey or Tennessee Rule of Criminal Procedure 11 which is not linked to a specified constitutional right is not cognizable in a suit for post-conviction relief. See State v. Prince, 781 S.W.2d 846 (Tenn.1989). Moreover, it is the result, not the

process, that is essential to a valid plea. Johnson v. State, 834 S.W.2d 922, 923-24 (Tenn. 1992). The critical inquiry is whether the Petitioner had knowledge of certain rights and waived those rights knowingly and voluntarily, not whether the trial court was the source of that knowledge.

The Petitioner's first contention regarding his guilty plea is that he felt coerced into the plea agreement because counsel "threatened" him with an eighty-year sentence. Although there is evidence of a letter from counsel that suggests an eighty-year sentence, counsel testified that she discussed the appropriate sentences with the Petitioner. The transcript of the guilty plea proceeding reflects that the Petitioner was concerned with a trial in which "I take a chance of getting 45 years." The Petitioner was accurately informed of the possible punishment before him if he went to trial and he chose instead to take the  effective sentence of twenty years pursuant to the plea agreement. Certainly, the prospect of serving forty-five years incarceration is daunting, but the option to go through a trial or to plead guilty does not constitute coercion that makes a plea involuntary. See Neal, 810 S.W.2d at 135.  This issue is without merit.

Secondly, the Petitioner claims that he did not understand the rights he was surrendering in his guilty plea. At the proceeding in the trial court, the trial judge and the Petitioner had the following exchange:

BY THE COURT:
Q:    Do you understand that you have a right to plead not guilty and go to trial before a jury and be represented by your lawyer, cross-examine, subpoena, testify on your own behalf, although you would not be required to, appeal if you lost, be represented free of charge by a

lawyer on appeal, challenge the sufficiency of the State's evidence, the manner in which they obtained their evidence.

You're giving up all these rights by pleading guilty. Do you understand that?

A: No. I was informed by my public defender that I would not be pleading guilty, that I would just be accepting the time.

At that point, the trial court and the Petitioner entered into a lengthy colloquy explaining that he was entering a plea pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160 (1970). Alford provides that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37; 91 S.Ct. at 167. After the trial court explained the Alford plea, a recess was had in which counsel met with the Petitioner to review the plea agreement. However, the Petitioner contends that his answer "no" was in response to whether he understood the rights he was relinquishing.

Although a review of the guilty plea proceeding reveals that the focus of the extended dialogue regarded the Petitioner's understanding his Alford plea, the trial court did state on the record the rights he was relinquishing. The record from the Petitioner's guilty plea shows that the Petitioner was addressed personally in open court by the trial judge and was advised of all his constitutional rights as mandated by Boykin. It does appear that the trial court failed to comply with the Mackey and Rule 11(c) requirements. The Petitioner argues that his answer to the questions demonstrates that he was not entering into his plea knowingly, voluntarily and intelligently. However, after reviewing the record, the Petitioner's statements seem to stem more from a desire to be uncooperative than from not

understanding. The Petitioner later answered that he freely and voluntarily was choosing not to go to trial. Counsel for the State voir dired the Petitioner at length, going over his waiver of rights form and the judgment forms for the offenses. The Petitioner indicated his understanding of and assent to the terms and thus, chose to proceed with the guilty plea. The Petitioner was allowed to confer with counsel to review the forms and the guilty plea he signed. The Petitioner acknowledged in open court that he had read, understood and signed his waiver of rights form. The Petitioner was informed both about the nature of his plea and sentences and about the consequences of his actions. This is sufficient to demonstrate that the Petitioner also knowingly and intelligently entered his plea.

At the post-conviction hearing, the trial court found that from an examination of the proof, the Petitioner did voluntarily enter a guilty plea. Furthermore, the trial judge expressly stated that the Petitioner's credibility was extremely lacking. The trial court found that by assessing the testimony in the record and assessing the Petitioner's demeanor, regarding the voluntariness of his guilty plea, "[i]t wasn't that he did not know what was going on. He didn't want to accept what was going on." The evidence in the record clearly does not preponderate against the trial court's findings. This issue has no merit.

Therefore, we affirm the judgment of the trial court denying the petition for post-conviction relief.

_____
DAVID H. WELLES, JUDGE


CONCUR:



_____
JOE B. JONES, PRESIDING JUDGE


_____
JOE G. RILEY, JUDGE